IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:16-248-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| BRYAN JAVON WILLIAMS | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 134). Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with his current medical problems, constitute extraordinary and compelling reasons for his immediate release.

The government concedes that the defendant has demonstrated an extraordinary and compelling reason for consideration of a sentence reduction. However, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671

1

(4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling

3

reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 134) and supplement (ECF No. 152), the defendant contends that he suffers from chronic hypertension, obesity, and is a former heavy smoker. He contends that these conditions, combined with the ongoing COVID-19 pandemic, necessitate his immediate release from incarceration.

In its opposition brief, the government concedes that the defendant has met his burden to show an extraordinary and compelling reason in support of his motion for compassionate release. However, the government contends that the defendant's release would result in an immediate danger to the community, in reliance upon the defendant's § 3553(a) factors.

In his reply, the defendant asserts that he is consistently described as a caring, loving, selfless person—a gentle giant. He also complains that the institution where he is housed is a cess pool. The defendant's Presentence Report (PSR) reveals that he sustained a close range shotgun wound that left him without five toes on his right foot. As a result, he has trouble walking. He also suffers from high blood pressure, and sleep apnea. Obesity is not mentioned, but he reported that he stood 6'3" and weighed 280 pounds at the time the PSR was prepared in October 2019.

Accordingly, the court will conclude that the defendant has, based on his medical condition, demonstrated an extraordinary and compelling reason for consideration of a sentence reduction.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense.*  In April 2013, while a confidential informant (CI) was on his way to purchase drugs from targets of a federal drug investigation,

the CI met the defendant from whom he purchased .7 grams of crack cocaine for $60. Later, when the Lancaster County Sheriff's Department (LCSD) was executing a search warrant on a target of a drug investigation at a residence in Kershaw, South Carolina, they discovered that the defendant lived in one of the apartments at that address. When an LCSD officer knocked on the door of the defendant's residence to serve the outstanding warrant, the defendant answered and readily admitted that he was in possession of a Remington Model 60 30.06 caliber rifle. The firearm, which was loaded with ammunition, was located on the mattress where the defendant had been lying when the officers entered his residence. Officers determined that the defendant had previous felony convictions which prohibited him from possessing firearms and ammunition.

In April 2016, the defendant was named in a single count Indictment with being a felon in possession of a firearm. In August 2017, upon the consent motion of the defendant and the government, this court stayed the defendant's sentencing pending a Fourth Circuit decision in the case of *United States v. Marshall*, Case No. 16-4594. One of the issues presented in that case was whether or not a S.C. Code provision constituted a controlled substance offense. Such decision would have had an impact on one of the defendant's objections to the PSR. The sentencing was continued numerous times until July 2019. At that time, the defendant's bond was revoked by the Magistrate Judge as a result of new state charges by the defendant regarding Drugs/Distribute, Sell, Manuf., or PWID of Controlled Substance Near School; Drugs/Manufacture, Distribution, etc., of Cocaine Base, 3rd or Subsequent Offense; Drugs/Distribute, Sell, Manuf., or PWID of Controlled Substance Near

7

School; Drugs/Manufacture, Distribution, etc., of Cocaine Base, 3rd or Subsequent Offense; Drugs/Distribute, Sell, Manuf., or PWID of Controlled Substance Near School; Drugs/MDP, Narcotics Drugs in School (ECF No. 99).

On October 8, 2019, the defendant pleaded guilty to an Information filed by the government (ECF No. 117), charging him with knowingly possessing a firearm which had been shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1) and 9224(a)(2).

The Presentence Report (PSR) (ECF No. 116) determined that the total offense level applicable to the defendant was 24 and his criminal history category was V. The defendant's guideline range was 92 to 115 months. The court did not grant a 3-level reduction for acceptance of responsibility due to the defendant's July 2019 arrest for 8 felony state drug offenses committed while on federal bond.

At sentencing, the court varied down one offense level, from a 24 to a 23, because the firearm possessed by the defendant was a hunting rifle, a Remington 30.06, not the kind of firearm that is likely to be used in a violent crime. Additionally, defense counsel persuaded this court that the defendant had the rifle for his own personal protection. Also, the undisputed facts of the case demonstrated that the defendant had been shot with a firearm in the past and received painful and partially disabling injuries as a result.

As to the defendant's criminal history, the court accorded the defendant a one point reduction in his criminal offense category from V to IV because of the "unique situation of [an] animal cruelty conviction." This reference was to one of the defendant's prior

8

convictions where he was charged with abusing an animal, but the circumstances of that case indicated that the animal had been very disruptive, even destroying its own dog house, and the court determined that the defendant's conviction on that score should not be held against him.

The reduced offense level of 24 and criminal history category of IV yielded an advisory sentencing range of 70 to 87 months. The court imposed a sentence of 70 months imprisonment with 3 years of supervised release—a below Guidelines sentence.

The defendant filed an appeal of his judgment and conviction (No. 19-4796). While that appeal was pending, the defendant filed the instant motion for compassionate release. On April 2, 2021, this court entered an order (ECF No. 146) deferring ruling on the motion for compassionate release until the underlying appeal was decided. On June 4, 2021, the Fourth Circuit issued its mandate affirming this court's decision (ECF NO. 149). This court then allowed the parties to file supplemental briefs to the motion for compassionate release.

The defendant is scheduled to be released from the BOP on April 15, 2024.

2. *History and Characteristics of the Defendant*. The defendant's PSR shows that the defendant's conviction in this case was his 15th conviction as an adult. Prior to his conviction in this case, his earlier convictions included carrying a pistol, disorderly conduct, trespassing, possession of stolen goods, simple possession of marijuana, assault and battery, malicious injury to property, carrying a pistol, possession with intent to distribute crack cocaine, distribution of marijuana, open container of alcohol in a motor vehicle, received stolen goods, ill-treatment of animals. Perhaps most significantly is the fact that, upon being

9

arrested, the Magistrate Judge granted the defendant bond pending trial and the defendant then within one month after his release, was charged with 8 state narcotics felonies.

The defendant is 43 years old, single, and has 3 minor children. He completed the 9th grade of high school. He has been unemployed since 2008 and receives social security income as a result of his prior serious injuries from a gunshot wound.

*Post Sentencing Conduct*

The defendant has no disciplinary infractions on his record while at the BOP. Additionally, the defendant states that he has a High School diploma, has participated in the RDAP program, vocational trade classes in food service preparation, meeting a daily menu of 500 meals per day at the prison where he works. He intends to pursue a career in the restaurant services industry and aspires to be a chef and operate his own deli.

The defendant states that his mother and two brothers are each willing to welcome the defendant into their homes and support the defendant in any way.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. It should also be noted that in papers filed in connection with his motion, the defendant does not appear to be remorseful for his instant conviction. He points out that he "never actually used, possessed the gun." He also argues that the gun was in his "constructive possession." While it is true that the defendant never used the gun in a crime, that was not an element of the crime to which he pleaded guilty. Moreover, the gun was on the bed where the defendant had been resting when approached

10

by law enforcement.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release. The defendant has a substantial criminal record, and he was clearly not supposed to have a firearm in his possession. Perhaps more importantly, while released on bond for the instant charge, the defendant engaged in serious felonious conduct in violating the state narcotics laws. This caused him to lose acceptance of responsibility at his sentencing hearing.

7. *Need to Avoid Unwarranted Disparity*. There were no co-defendants in this case.

### *Additional Grounds Asserted by the Defendant*

The defendant also raises as a ground for his immediate release the fact that he has a loving and supportive family ready to receive him if he is released. The court understands this argument, has carefully considered it, and must respectfully reject it. To reward someone

with early release because he is fortunate enough to have a loving and supportive family would work to the disadvantage of another defendant, who committed the same crime under the same circumstances, who did not have family support. This would create a significant disparity in sentencing which the law should not recognize. Thus, although the court has carefully considered this argument, it must respectfully reject it.

## CONCLUSION

For the foregoing reasons, the court determines that, even if the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied[1] (ECF No. 134).

IT IS SO ORDERED.

January 18, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")